My name is Sandy Svetkov from San Francisco. I represent the appellant. And it's Patrick Ojo. He's not Hispanic. He's of African descent. Ojo. Ojo. No, Ojo. Ojo. Ojo. Ojo. Do you want to mediate that? No. I don't. If this was up in North Dakota, I'd be Ojo. Your Honor, I'd like to reserve five minutes. Go ahead. You know what that means? Open your eyes. Yes. Okay. You need that to be a good tennis player, too. I play soccer, Your Honor. I know. Go ahead. Mr. Ojo appeals the dismissal of his Fair Housing Act disparate impact claim. The district court dismissed and held that the claim was preempted under the McCarran-Ferguson Act. The McCarran-Ferguson Act provides that no act of Congress may invalidate, impair, or supersede any state law regulating the business of insurance. The issue in the case is whether the disparate impact claim under the Federal Fair Housing Act either is in conflict with or impairs the Texas statute which permits insurers to use credit scoring in setting insurance rates. Right. And our submission is this. Under the Texas credit scoring law, Texas provides that the credit factors used cannot be unfairly discriminatory. Which factor did the farmers group use that was unfairly discriminatory as a factor, not as a result of the factors coming to a disparate impact? Yes. Your Honor, the complaint cannot identify which factor because it alleges the factors that are used to compute the credit score are undisclosed. The complaint says that in several paragraphs of the complaint. For example, do you agree, maybe I don't ask you to agree because nobody's stated this yet, but if after discovery there are no racially discriminatory factors inputted by farmers group, but there still results a disparate impact in that a disproportionate amount of African Americans fail under the credit scoring to get the best score as proportionate to their population, would you say then that there is no disparate impact? No, I think, Your Honor, the question presented at that point would be whether the credit score itself was, in its collective application, had a discriminatory impact even though no individual factor. Let me punctuate the point. At that point, there might be an argument about the McCarran-Ferguson Act being present because at that point we would have the entire credit score at issue as opposed to factors because we know the Texas statute permits credit scoring but bars unfairly discriminatory factors. But at this point, the complaint alleges that the factors are unfairly discriminatory and although the district court construed our complaint broadly, it's our complaint, Judge Bea, and if we're willing to accept the narrow construction to achieve consistency with Texas law, we as the plaintiffs should be allowed to prove the narrow case that it's factors that are unfairly discriminatory and if it is factors that are unfairly discriminatory, Judge Bea, then the federal law prohibiting disparate impact discrimination and the Texas law prohibiting unfairly discriminatory factors are complementary and not in tension with one another. We should get past the motion to dismiss because our theory is narrow at this point. You're not making a facial challenge to credit scoring. You're saying that you're making an as-applied challenge because of factors unknown that are used in Texas. That's correct, Your Honor, and you can cross the broader bridge at the end of discovery and then there might be an argument about preemption. And I make that point. It's important because the Humana case in the Supreme Court arose on summary judgment, not on a motion to dismiss. Now, one other question while I was still on pleading. Yes. We're all wondering if the AT&T Twombly case applies outside of antitrust litigation. What is your view, because I see here you say you cannot identify the factors. If we were to apply not Conley v. Gibson, which had been overruled by the Twombly case, but Twombly, we'd say, Mr. Svetkov, go back and find out what those factors are and allege them before you go any further in this expensive litigation. I don't think that's correct in a civil rights context. Okay. The Sierkiewicz v. Surima case is the controlling case. It was applied by this Court in Edwards. And in that case, in the civil rights context, you don't have to allege the specific facts, but here's what we have alleged. We have alleged that in January 2004, Mr. Ojo was told that the application of Farmer's credit score resulted in a 9 percent increase in his homeowner's policy. We allege in our complaint that the factors used to compute those credit scores, factors that are not known to us nor disclosed to us nor disclosed to Mr. Ojo, resulted in a disparate impact on Ojo and others similarly situated. They resulted. But did you also allege that they were unfairly discriminatory? Yes. If you look at paragraph 15 of the complaint on the fourth excerpt of record page 4, Farmers discriminated against minorities in its underwriting by implementing certain practices described below, which placed minorities in the substandard farmer's mutual insurance company and placed minorities in more expensive substandard policies. That's paragraph 15. In 17, we said, Farmers has kept secret the credit scoring formula, including the credit factors that impact the score. In paragraph 27, Farmers premiums have been determined based on a number of undisclosed factors that vary between policy owners and which are not revealed to the policyholders or its agents. And in paragraph 19, we allege the last sentence of paragraph 19 on page 5 of the record, Farmers, however, has taken no actions to lessen the adverse impact on minorities. Our theory is a disparate impact claim that there may be less drastic nondiscriminatory alternatives which could achieve the business justification that Farmers asserts and yet not discriminate. So you can't get past the motion to dismiss. If you were able to prove, for instance, that Farmers uses as a factor in setting the homeowners premium rates. The geographical location of the houses which were located in preponderantly Afro-American neighborhoods, a type of redlining. Correct. Which would boost the insurance rates. That would be relevant under your pleading. Correct. And it would be an unfair discriminatory practice under the Texas statute. Correct. All right. That's the theory. But I want to answer your question about Bell Atlantic v. Twombly. Bell Atlantic v. Twombly says we have to have a plausible theory. And I think that those four paragraphs and the rest of the complaint that I've alleged to you, including the individual impact on Ojo, provide you a plausible theory that comports with Bell Atlantic. And I say also that Bell Atlantic supports another part of our theory, and that is that the district court had no business disbelieving our theory. In other words, when the district court said we were challenging the entire practice of credit scoring, it was doing what Bell Atlantic said it couldn't do. It was disbelieving our narrow theory of the case. And so I think Bell Atlantic supports our position in two discrete ways. We have a plausible theory, and it was a theory that the district court should not have disbelieved. I think on the present record, the Texas statutes can be reconciled with the Fair Housing Act, and we get past the motion to dismiss. There may come a time down the line when your hypothetical comes up, which the entire practice of credit scoring may be in play. And then we can argue about whether a state which says you're permitted to use credit scoring, it has a protectable interest under the McCarran-Ferguson Act. And I submit to Your Honor, if you think about it, Umana made the distinction between a Texas statute, a state law that required insurers to do something, and a state law that permitted them to do it. Because whose ox is being gored if federal law is used to prosecute a permissive practice? The insurance company's ox is being gored, surely, but surely not the state regulators. The state regulators have no particular interest in ensuring that the insurance company use credit scoring or any other device, unless they required it. They don't require it. They permit it. Kennedy. Well, there may be some free marketeers among the state regulators who wish to give freedom to their insurers in order to reduce the prices. And that's right. But one of the most significant and telling factors that the Supreme Court recognized in Umana and that the Seventh Circuit recognized in the NAACP case, where are the state regulators here? The state Texas regulators have not come to the district court and they have not come to this Court to say that their toes have been stepped on by this lawsuit. And they could have. And they have. I'm sorry, Judge. Have you got health insurance? Judge Wright had a very good question for you. How do you know? Because I know. I can tell. What I wanted to ask you is this. Yes. You pointed out that it's permitted to use credit scoring. And you're saying it well may be that some of those factors fall against the state law, which says you can't discriminate. Why shouldn't this issue first be examined by the insurance regulators? Well, the — Well, Your Honor, the Fair Housing Act applies whether there — it is not precluded by the doctrine of primary jurisdiction. No civil rights cases have ever been precluded by primary jurisdiction. And the case law in the circuit and other circuits have so held. And neither does the file rate doctrine. But one of the things about civil rights acts that implicate the federal system in the system — and I was a prosecutor for a minute — is that the states don't respond to enforce their own regulations. And when they don't, the federal courts have been open to vindicate civil rights, Judge Wright. That's what the civil rights — You can't say. You can't say they haven't done anything. You don't know whether there are any factors here that are discriminatory. I'm not — you know, I know what you're pleading. And I'm just saying, isn't that a matter that we take into consideration as to whether or not the McCarran Act applies? No. The McCarran Act, by its terms, requires that there be either superseded, invalidated or impairment of the State law. And when the aim of the State law is no discrimination, it is — and the aim of the Federal law is no discrimination, the Federal law may operate because there is no impairment. It is not a question of allowing the States to go first. It's a matter of an area where there can be no — where there can be concurrent attention. And even if the remedies are different, Humana in the Supreme Court recognized that there can be concurrent attention. Yes, the States can look at it, but if they don't, you're not precluded from going to a Federal court for vindication of the right. If you level — if you raise a level of abstraction to the Federal government and the State government are against discrimination, then it sounds as if the Federal remedy will not impinge or impair or supersede the State government. But if you go to a little bit lower level of abstraction, a more practical level, say, where — whilst the Federal government prohibits disparate treatment and disparate impact, the State government may prohibit disparate treatment but not disparate impact, and then to impose the Federal level, it would impair the State policy, would it not? Yes, that's part of the — that level of analysis is in this case, and I'm going to take some of my rebuttal time to answer that question because it's important. But your point is we don't have to get there yet because you haven't pleaded that issue. Well, but no, but in a way we have, and I think I want to satisfy you on this, Judge the District Court and our opponents say unfair discrimination only means overt intentional discrimination, not disparate impact. Your Honor, for several reasons, that's wrong. If the Texas legislature wanted to limit it in that way, it easily could have and should have said so. It didn't. By not doing it, it left the term unfair broad. It didn't say intentionally unfair, it just said unfair. So now you look to other sources for the definition of unfair. One source this Court looks to is the dictionary. Unfair means unjust. That's a fairly broad term. Better than that, the Ninth Circuit has spoken on this. In FAF and in the affordable housing versus Fresno case, the Court said twice that disparate impact discrimination is just as unfair as intentional discrimination. So you have precedent, controlling precedent in this circuit that defines the term unfair to include both. And guess what? The Supreme Court in Watson versus Fort Worth said that disparate impact was the functional equivalent of disparate treatment. The point is, as the FAF case quoted the Eighth Circuit in the Blackjack case, this thoughtlessness in the implementation of a rule can be just as damaging as intent. And that's why we have a disparate impact remedy. So on that level of analysis, the word unfair is broad enough to cover both intent and disparate impact. And if Texas wanted it otherwise, it should have said so. Well, don't they define unfair discrimination as discrimination which involves race, ethnic, et cetera? I think it's in 544 somewhere, isn't it? It does, but the more important statute is Article 102, which was enacted at the same time as the credit scoring in the credit scoring legislation. Article 102 says the following. Rates used under this code must be just, fair, reasonable, adequate, and not unfairly discriminatory. And then in paragraph C, they define a rate is unfairly discriminatory if A, not based on sound actuary, B, not reasonably related to loss, or in the disjunctive, based in whole or in part on race, creed, color, ethnicity, or national origin. In whole or in part. So if a credit factor is a part, it fits. In other words, it fits our theory of the case. The credit factor is the in part part of this. So Article 102 took this into account. And it doesn't say only intentional. It says unfair. And I take that to mean what it means in the dictionary, what it means in FAF and what it means in Fresno, what it meant in the Fort Worth case. Unfair is unjust and it covers both. And I think I'll save my minute. Thank you. Good afternoon. May it please the Court. Harriet Posner, Skadden Arps, on behalf of the appellees. I agree with Appellant that it is the law of the United States that the business of insurance companies in dealing with their policy holders shall be subject primarily to regulation by the states. As the Supreme Court has articulated, the McCarran-Ferguson Act was enacted to ensure that states could regulate the business of insurance free from the inadvertent preemption by federal statutes of general applicability. To borrow from Judge Easterbrook in the NAACP versus American Family case, quote, Congress did not tie its hand. Instead, it prescribed the consequences of silence and specificity. Federal laws that do not conflict with or supersede state rules always apply. Federal laws inconsistent with state laws apply when Congress says so directly. Because the Fair Housing Act is one of those laws that is silent on the issue, courts considering cases brought under the FHA, such as this one, must tackle the question of whether application of the FHA could impair, invalidate, or supersede state regulations of insurance. All states regulate insurance, and the regulatory scheme, as one would imagine, varies from state to state, and within a particular state may vary over time. Some states' insurance statutes and regulations address credit scoring directly. Some do not. Would you explain something about me? It ought to be very clear, but I just don't know what credit scoring means. Just how does it apply? Can you give me a little explanation? Well, it can be. Do you take a person's credit rating or what? In part. There are different things that are, that bear on, that relate to people's credit and use of credit that go into credit scores. And various things can be considered. There is some credit scoring agencies, such as Fair Isaac or Choice Point, calculate a score that may be used by an insurer or in setting a rate. Is the idea being that people who have bad credit may not pay their premiums, or is it based on the idea they might want to intentionally burn down their house, for example? Neither, Your Honor. Actually, it's that the credit score, based on regression analysis and studies that have been done, is highly correlative to risk of an insurance. Oh, okay. Just like if you have more accidents, they're going to raise your rates. Correct. And the lower credit score. Or if you're getting older, they may raise your rates. Correct. Is this an idea that if you're a deadbeat, it's more likely that somebody is going to slip and fall on your front porch? No, I think it's more that individuals' use of credit and the treatment of credit has a correlation to frequency of claims and amount of loss. It's not just about being a deadbeat. There's a wide range of credit scores, and they correlate with insurance risk. Okay, thank you. All right. And can an individual find out what their credit score is? Yes, Your Honor. How do you do that? Well, the agencies that calculate credit scores will give an individual credit scores. You see it. You get notice of it on television sometimes. If you want to know what your credit score is, dial 1-800. Is that how you do it? Well, I'm not aware of that commercially, Your Honor, but if it's on TV, I assume that that's the way that it one way that an individual can get a credit score. Could you direct your, at some point in your presentation, your argument towards the point that Mr. Zetkoff made, that the district court misinterpreted the complaint on file, the operative complaint, which was not alleging that all credit scoring violates the FHA, but that, as I understand it, in this particular case, the factors used in Texas include discriminatory practices, and therefore, if that is so, they stated a claim for relief under both Texas and Federal FHA. Well, my read of the complaint is consistent with the district court, but I don't believe that the outcome of this case rests on whether the challenge was to credit scoring in general or factors used in credit scoring because of what the FHA will permit and what Texas law permits. Explain that, because if I understand Mr. Zetkoff correctly, and the illustration that we were discussing, that if one of the factors that is used in Texas is, and is allowed to be used, is a redlining of racially impacted geographical units, I think that would be a racially discriminatory factor, would it not? I don't think necessarily. I think what the reading of the Texas statute says, that the credit score cannot be based in whole or in part on race, meaning either that the rate is set higher just because someone is African American or Hispanic, or one of the component factors used in the credit score is that, or intentionally serving as a process. That prohibition doesn't extend to other measures which are at first neutral, but in the event respond directly to racial classifications? Like, for instance, redlining? No, I don't. I believe that under the new Texas regulatory regime that was enacted in 2004, in 2003, effective 2004, remember this is a very definite change in Texas insurance law. Prior to this point, the law in Texas was a general insurance regulatory framework that many other federal appellate courts had found to be too general to be in conflict with the FHA. In 2003, Texas very deliberately effected a very big change in its insurance laws, enacting a regulatory regime that deals comprehensively with credit scoring and that permits the use of credit scoring even though there's a disparate impact. So they permit a disparate impact, which means that there are facially neutral factors which result in a difference in rate between persons of different races. I agree with you, but I take that that's your position. I don't say I agree with you ultimately. But Mr. Zvetkov says that his complaint alleges that there are discriminatory factors under Article 102 because they take into consideration race. And he doesn't know what they are yet because all those factors are secret. And what he needs is discovery, and then he will discover some factors, and then he will prove them, and then he will have a race-based credit scoring. Right? Well, that's his position. There are several problems with that. First of all, the factors used are not secret, as is plain from the Texas statutes. If an insurer is going to use credit scoring, it must file its credit scoring model with the State, and thus it becomes a public document. That's in the credit scoring chapter. That's 559. I can give you the specific reference to where it becomes public. So then your position is if they're not secret, then they're and could be known to Mr. Zvetkov, and he could allege specific factors which are discriminatory and he has not done so. That's correct. And therefore, if you apply the Twombly case, his complaint should be dismissed on that ground. Among others, yes. All right. The factors are publicly available. In addition, even if one of the factors were race, specifically, there's no question and it is not the appellee's position that Texas law permits intentionally discriminatory conduct. It permits disparate impact where there is a sound actuarial basis. That's very different from an intentional discrimination situation. This is not an intentional discrimination case. It has never been an intentional discrimination case. The plaintiff in the case, Mr. Ojo, brought claims under the Fair Housing Act. And interestingly, although he's a Texas resident, he brought California Fair Housing Act and California Unfair Business Practices Act claims and no Texas Fair Housing Act or other claims. The other problem with Mr. Zvetkov's position is the Fair Housing Act is not in concert, even assuming that there were a discriminatory factor or a factor that results in discriminatory impact because of the following. Under the Fair Housing Act, there are three things. The test as set forth by this court in Gamble requires first the showing of a discriminatory impact. Then the burden shifts to the defendant to show that there is an actuarially basis  Then it shifts back to the plaintiff to show that there are no less discriminatory alternatives to the insurer in setting the rate. That third factor, and this was discussed at oral argument in front of Judge Morrow and conceded by the plaintiff in that hearing, that third factor could result in the ban of the use of credit scoring should the plaintiff be able to show that there's a less discriminatory factor. Under the Fair Housing Act, it would thus bar credit scoring. That is not the case under the Texas statutes. There is absolutely no requirement. The Texas statutes require that if you're going to use credit scoring, it has to be based on sound actuarial principles. It does not require that there be a less discriminatory alternative. Well, the two aren't consistent. If you're going to have credit scoring on an actuarial sound basis, that's one way. And anything else is irrelevant, it seems to me. Correct. Let me get that last, that third. You're saying that under the FHA, when the burden shifts back to the plaintiff, the plaintiff must show as to credit scoring that there is a less discriminatory method to achieve the actuarial purpose. Is that correct? Yes. And you're saying that is not a requirement under the Texas statute. That's correct. All right. I still have a problem, and maybe I'm peculiarly thick this morning, but I don't understand why Mr. Svetkoff's submission that his particular pleadings plead the existence of unfair discriminatory factors in the Texas credit scoring system is not sufficient to survive. A motion to dismiss. Well, I don't see the complaint as alleging that race is one of the factors that's used in the credit score or that the grade is based on. He cited that certain, paragraph 15, certain practices are implemented and they're kept secret, but they result in unfair discrimination. Right? They result in disparate impact is what that allegation is. Right. Not necessarily that they are based on race. No, but he talks about unfairly discriminatory. Factors were used which were unfairly discriminatory. Now, suppose that he were able to find through some discovery or investigation that there were some factors that the Texas insurance commissioners or insurance group used that were indeed racially discriminatory. Wouldn't he be able to prove that under his present complaint? I think so. Well, a factor that has a discriminatory impact, which is what that means, is not prohibited under Texas law, though. But if it's an unfairly discriminatory factor, it is prohibited, even if it has or what you're saying is that if it's an unfairly discriminatory practice, it's a disparate treatment case, not a disparate impact case. That's correct, Your Honor. Well, maybe he wants to prove a disparate treatment case. Can't he prove that under his present complaint? No, he cannot. Why? Because paragraph 2 says that this is this credit scoring program exerts a disparate impact on minorities. There is no 1981 claim. There's no 1982 claim. There's no intentional discrimination claim in this case. It is a disparate impact case, not a disparate treatment case. I see. It never has been. Maybe Mr. Stetkoff will answer that in rebuttal. The one last point that I would like to make, because I think we have discussed in our brief all the code sections, and I think we've talked about them this morning, is that the issue of there's an additional frustration of the State regulatory scheme here by the Federal court needing to engage in the practice of looking at what actually sound and doing those analyses that the Texas, the State of Texas and the Texas Insurance Commissioner are in a better position to do and figure out whether they comply with Texas law. And there is, to have the Federal courts and the State doing that at the same time Let me ask you a question, which I didn't ask Mr. Stetkoff, but he might take a note and answer it also. We are now in the position as a Federal court in the Ninth Circuit looking at Texas law to determine whether the Texas insurance regulations allow disparate impact when we all are in agreement that they don't allow disparate treatment. Now, I float this as an idea. Would it not be best to address this question as to what Texas law allows to the Texas Supreme Court by suggesting a certification of the question? We do that from time to time, and sometimes we're even successful in getting the California Supreme Court to take these questions. Not always, but sometimes. But this is a, I'll tell you why. I happen to have a very good clerk who happens to be from Texas and who clerked on the Texas Supreme Court. And she tells me there ain't any Texas law on this issue to tell us whether disparate impact is permissible or not. There just isn't any. Question. Should we not certify that question to the Texas Supreme Court for an answer? I realize this comes perhaps unannounced. Well, it's sort of like that do you want to mediate this question, question that was posed in the last argument. No, mediation. I'll try to answer more directly. The difference is that mediation may drag on, and certification is an answer to a question. Well, it's an interesting idea, and I agree that there is neither any Texas State decision on this, nor is there any Fifth Circuit decision. Because the Fifth Circuit in De Hoyos, when it considered that case, did not have before it, the De Hoyos case did not have before it, the enactment, the 2003 changes to the insurance regulatory scheme. So to the extent that that would be helpful to this Court, I certainly would seem to be wise. I think the answer is not unclear from the statutes that you have before you and the Texas, the legislative history and the regulations that were promulgated and the Texas Insurance Commissioner's views on the subject. So I think there is enough before the Court as it currently stands to decide the question. Yeah, but we're on 12B-6, the dismissal. We're just considering the complaint, whether the complaint states the cause of action under the Fair Housing Act. I don't know. If I were on the Texas Supreme Court, I would be very happy with having the case put in my bag. Well, as I said, I think there is enough in the law and in the legislative history and the regulations to do it without resort to the Texas Supreme Court. But to the extent that this Court finds it would be helpful, I wouldn't want to stand in the way of that. Could you address, please, why you think that the McCarran-Ferguson Act preempts the Texas or rather why you think it's a reverse preemption to allow the Texas law to apply when the Texas Fair Housing Act, a 1993 enactment, absolutely mirrors the Federal FHA? And if FHA allows disparate impact, why shouldn't we say and Texas FHA allows disparate impact, why shouldn't we say that that is pretty good authority that the legislature intended to preserve disparate impact in Texas insurance cases? I'd be happy to address that, Your Honor. The Texas Fair Housing Act, which I think was enacted in 1989, has specifically a subsection B. It's a very short discussion. Effect on other laws says this chapter does not affect a requirement of nondiscrimination in any other State or Federal law. The Texas insurance statutes that permit credit scoring come after this and specifically address this issue. In addition, the regulation that the plaintiff cites enacted under the Fair Housing Act would also, if not tried to be in harmonized with the insurance statutes, would conflict in other ways because that regulation prohibits discrimination by refusing to provide insurance or providing such insurance differently based on disability, sex, and familial status, which are also things that are permitted under the more recently enacted Texas insurance statutes. So in order to harmonize them all together, I think that we have to look at the more current statutes as opposed to the older Texas Fair Housing Act. Thank you. Thank you. I think I only have a minute. The first thing I want to tell you is if you look at excerpt of record page 113, the district court summarizes what must be disclosed to the insured by the company, and it's the score and that scoring was used, not the factors. And in fact, with respect to a renewal policy like Mr. Ojo's, it's even more restrictive. So the suggestion, yes, we can find out about what the score is and that they use credit scoring and that it raised the rate, but we can't get the details. Those still are undisclosed. And I think if you look at, Judge, the district court's description of the statute, you'll see that that's correct. What about your paragraph 2, which describes disparate impact as opposed to disparate treatment? Do you ---- This is a disparate impact claim. This is not a disparate treatment claim. And so I want to ---- and I want to address your certification question. All right. No party has suggested that this be certified. And I thought about it. We actually moved court of that question in preparation for this argument. No party suggested in the district court nor in the briefing before this court. And ---- but that's not good enough, because you can do it on your own, Pop, if you thought it was appropriate. If the Texas statute was ambiguous, and I agree with counsel, it's not ambiguous. It says unfair discrimination, credit factors that constitute unfair discrimination. It's not the ---- unfair discrimination is not defined in the statute, but unfair discrimination is defined in the law. And it is not ---- it is defined by its plain language, unjust, and it's a broad term, and it covers both intent and disparate impact, Judge Beyer, as I argued in the opening. The case law in this circuit in the Supreme Court supports that. If Texas thought that they were only going to prohibit intentional discrimination, they should have said so. They didn't. Now, counsel says, but they don't say anything about less discriminatory alternatives. Of course not. They talk about unfair discrimination. Unfair discrimination opens up two causes of action. Intentional discrimination, where I have to show a pattern. If I had that claim, I would have to show a pattern of discrimination with intent. I don't have that claim. I have a disparate impact claim. What is my burden? The plaintiff's initial burden is to show a disproportionate impact based on race, ethnic origin, national origin. That's ---- if I show that, the burden shifts to the company to show a business justification. If they show that the credit scores are justified because they're correlated to risk, they assert that, and the statute is based on that assumption. The burden switches back to me to show a less discriminatory alternative. It's not a matter of whether the statute says that. It's the cause of action. It's an element of a cause of action, Your Honor. The statute only prohibits unfair discrimination. This court, as the district court was, is in the best position with its precedents in this court and the Supreme Court to define the term the way the dictionary defines it. You don't need the Texas Supreme Court to help you look in the dictionary. I think you can look at this. Counsel may be absolutely right that if it's not the factors and it's the credit score itself, we'll find out about that at summary judgment and we'll cross this bridge at summary judgment. But not now. Not now. We get to say our complaint is narrow. It addresses the credit factors. The credit factors are what Texas law looks at. The third element on your burden shifting is to show a less discriminatory alternative to credit, to credit scoring overall or to all the factors used? To the factor that was discriminatory. Let's assume we are able to identify discriminatory factors. Say a redlining, right? Yes. All right. And they come back and say, no, we need this. This is business justified. All right. And, you know, we need this. Now it's our job to say, look, instead of redlining, use something else. Less discriminatory impacts. Use some other factor. Other credit-related factor, which would give you the same answer. Other credit-related factor, which allows a correlation between credit practices and risk. And if we can't meet that burden, then we lose. All right. All right? Thank you very much. But we lose at summary judgment. Not here. Thank you. All right. Thank you very much. The matter will stand committed and the court will adjourn. All rise. Court is adjourned.
judges: Pregerson, Bea, Bright